HEARD NOVEMBER TERM, 1874.

## MONAGHAN *vs.* SMALL.

One who purchases land at a sale ordered by the Court in an action for settlement of the estate of a decedent will not be compelled to accept a conveyance unless it appears that the title is good to a moral certainty.

### BEFORE GRAHAM, J., AT CHARLESTON, AUGUST, 1874.

John J. Monaghan died, intestate, on the 20th December, 1872. At the time of his death, he was in possession, as owner, of a lot of land on the South side of George street, in the city of Charleston. Elizabeth Monaghan, his widow, and one of his distributees, became his administratrix, and on the 19th of June, 1873, she commenced action in the Court of Common Pleas against the other distributees of the intestate, alleging that there were no personal assets of the estate, that there were debts to be provided for, and praying that the said land be sold and the proceeds applied to the payment of the debts, and the surplus, if any, distributed.

It was referred to a Referee to report upon the facts, and in July, 1873, he made his report recommending a sale, and a few days afterwards made a supplemental report, wherein he stated that John J. Small had submitted an offer in writing to purchase said land at the price of $4,900, and recommending that he, the Referee, be authorized to accept the offer and convey the land to the purchaser.  In August, 1873, the supplemental report was confirmed and the Referee ordered to make the sale.

John J. Small having refused to accept the title, a rule to shew cause was issued against him, and upon his return being made, it was referred back to the Referee to report upon the title.

In April, 1874, the Referee reported that on the 5th of November, 1838, Alfred R. Drayton executed a deed whereby he conveyed to the late Judge Edward Frost four slaves in trust for the sole and separate use of his wife, Martha S. Drayton, for life, and at her death to the use of such persons' as she, by her last will and testament, might bequeath the same; and in default of such appointment, "in trust for the next of kin of my said wife who by law may be entitled thereto," with power, on the application in writing of Mrs. Drayton, to sell all or any of said slaves and reinvest the proceeds in other property subject to the same uses, "and the same to do with other property that may be substituted in a sale of any part thereof as often as may be required." This deed was recorded in the Secretary of State's office, in Charleston, in Miscellaneous Records VVVVV, p. 225.

On the 28th January, 1853, Otis J. Chafee, in consideration of $7,500 to him paid by " Edward Frost, trustee of Martha S. Drayton, under a certain deed of trust, bearing date 5th of November, 1838, and recorded in the Secretary of State's office, in Charleston, Miscellaneous Records, page 226," conveyed the lot of land in question in his case to "the said Edward Frost, trustee, his heirs and assigns, forever." In this deed no trusts were declared.

Alfred R. Drayton died in or before July, 1860, and on the 16th of June, 1863, Martha S. Drayton, in consideration of $15,000, conveyed the lot to John J. Monaghan in fee simple. On the back of his deed Edward Frost wrote and executed a release as follows : " Know all men by these presents, that I, Edward Frost, trustee of Mrs. Martha S. Drayton under a certain deed of trust, bearing date the 5th of November, 1838, and recorded in the Secretary of State's office, in Charleston, in Miscellaneous Records VVVVV, page 225, do hereby assign and release to the said Martha S. Drayton, her heirs and assigns, all the right, title, interest and estate which, by the said deed of trust, was vested in me in and to the lot of land and building within described as conveyed by the said Martha S. Drayton to J. J. Monaghan."

The Referee further reported that on the 13th of July, 1839, George Buist, executor of the will of Mrs. Drayton's father, executed, under an order of the Court, another deed of trust, whereby he conveyed to the said Edward Frost, trustee, $10,000 in bonds, cash and negroes, to be held for the use of the said Martha S. Drayton for life, with such limitations that if she should survive

her husband, Alfred R. Drayton, the fund would be hers absolutely; that Mrs. Drayton had survived her husband; that part of the purchase money paid to Otis J. Chafee for the same lot of land under the conveyance of January, 1853, was derived from the funds held of trust executed by George Buist, and part was paid out of the money paid by J. J. Monaghan in 1863, and that no part of it came from the proceeds of property held under the deed of the 5th November, 1838.

The case came before the Circuit Court on exceptions by John J. Small to the report of the Referee, and his Honor the presiding Judge held that the title was at least doubtful, and not such a one as the Court would compel a purchaser to accept, and he ordered that the exceptions be sustained and the rule dismissed.

Elizabeth Monaghan, the plaintiff, appealed on the following grounds:

1. Because J. J. Monaghan, under the deed from Martha S. Drayton and the release to her endorsed thereon by E. Frost, trustee, delivered to him as one and the same conveyance, took a fee simple title to the land in question.

2. Because the execution of the said title to J. J. Monaghan by Martha S. Drayton, followed by the release to her from E. Frost, trustee, endorsed on said title deed, whether said release was executed at the same time as said deed, or subsequent to the delivery thereof, was a valid execution of the power of sale under the deed of 5th November, 1838.

3. The purchase money paid to O. J. Chafee by E. Frost, trustee, in consideration of the conveyance from the former to the latter, having been taken from funds embraced in the deed of 13th July, 1839, and J. J. Monaghan having had the legal estate vested in him by the conveyance from Martha S. Drayton and the release thereon endorsed, and being also entitled to the equitable estate, no suit at law for the recovery of said land can ever prevail; and, under any proceedings which may be had in equity, a Court would reform the conveyance from Chafee to Frost, trustee, in accordance with the terms of the deed of 13th July, 1839.

4. Because under the deed of 5th November, 1838, Mrs. Drayton, upon the death of her husband, took an absolute estate in the personalty, and hence a fee simple estate under the deed from Chafee to Frost, trustee.

5. That if, by the conveyance from M. S. Drayton to J. J. Monaghan, the latter took but a life estate, he was in possession as life tenant, and the release by E. Frost, trustee, to Mrs. Drayton enured to his benefit and vested in him a fee simple estate ; having the one estate, a simple release was sufficient to carry the fee.

6. Because the title tendered by R. S. Duryea, Referee, to J. J. Small was a good title, which would have conveyed a fee simple estate.

*Ficken* and *McCrady*, for appellant.

*Simons & Seigling,* contra.

August 8, 1875.   The opinion of the Court was delivered by

WRIGHT, A. J.   The question is to be considered as if raised by a complaint on the part of the administratrix and distributees of the late John J. Monaghan, the intestate, to require the respondent, Small, specifically to perform his contract for the purchase of the premises referred to in the pleadings. He declines to accept the title tendered under the order for sale, because the intestate, at the time of his death, did not have such an interest in the property as will allow his distributees to make a good and absolute title in fee, or, at least, one which will be free from doubt.

In passing on the several deeds by which the title is claimed to have vested in the intestate, we are not at liberty to depart from the language expressed on their face, nor are we permitted to receive evidence to change their terms, for the purpose of reforming them, so as to give them effect through the real intention which the parties had in view at their execution. We must pass upon them as they are. When they are reformed, by proceedings proper and adequate therefor, they will not be the deeds upon which we are called upon to pass in determining the question now before us.

The conveyance of Otis J. Chafee, of 28th January, 1853, is to Edward Frost, trustee of Martha S. Drayton, under a certain deed of trust, dated November 5, 1838, which is referred to as recorded on certain stated pages in a given volume of the records of the office of the Secretary of State, in Charleston. The deed of Mrs. M. S. Drayton to J. J. Monaghan, the intestate, is dated 16th June, 1863, and is endorsed with a release by Edward Frost, as her trustee, under a certain deed, executed on a stated day, and recorded in a

named volume of records in the office of the Secretary of State. The day of the execution of the deed and the date and place of its record correspond in every particular with those expressed on the deed of Chafee to the said Mrs. Drayton. It is the deed that Monaghan accepted on his purchase from her, and he neither holds nor claims under any other. If he has been misled by recitals which materially affected his deed, can they who now claim under him require Small to accept a title to perfect which he must encounter expense, and, most likely, litigation?

It is due to the counsel for the respondent to say that he did not press upon the Court the point which was taken before the Circuit Judge, and is referred to in his decree, that the recital in the deed of Chafee to Mrs. Drayton and the endorsement of Frost, the trustee, on that from Mrs. Drayton to Monaghan could be referred to the deed of Mr. Buist to the said trustee, of date 13th July, 1839, under which Mrs. Drayton, it is claimed, took an absolute interest in the property thereby conveyed. Not pressing that view, the counsel contended that the conveyance of Mrs. Drayton, with the release thereon by her trustee, constituted together a valid execution of the power of sale created by the deed of November 5, 1838, and vested in Monaghan a fee simple estate.

The argument was able and exhausting, evincing not only great research, but learning. It, however, has failed to convince us. The pressure on our time prevents a discussion of the various propositions it so forcibly presented. It proceeded upon the principle that the words "next of kin of my said wife who may by law be entitled thereto," in connection with the trusts established by the deed of November 5, 1838, must be held to be words of limitation, and, in default of appointment by Mrs. Drayton by will, the absolute title to the property included in the deed, or that purchased with the proceeds of it, under the rule in Shelly's case, vested in Mrs. Drayton. Without pursuing the argument of the counsel step by step, it might be enough to say that, admitting the existence of the rule, which, according to Mr. Jarman, is "one of law and not of construction," and must, therefore, be applied where the words of the instrument, after limiting a freehold estate to a person, by the same conveyance limits an estate mediately or immediately to his heir in fee or in tail, whereby the ancestor takes the whole estate, it has no application to the deed before us. Although the words "next of kin," particularly when followed by the words

"who may by law be entitled thereto," will generally denote those who would take under the Statute of Distributions, (and whether a widow or those claiming under the statute by representation are included, it is not necessary now to decide,) yet they are not, in the general or technical sense, to be considered, in all particulars, as synonymous with heirs. But heirs may take as purchasers where words of explanation, or fresh words of limitation, are superadded by which a new inheritance is grafted upon the heirs to whom the estate is given.—4 Kent, 22. In *McLure* vs. *Young*, 3 Rich. Eq., 559, after a devise of real estate to a daughter for life, it was given absolutely and forever to her *lineal descendants;* and should she die without lineal descendants, one or more, living at her death, then over, the words were held to convey an absolute estate in remainder to the lineal descendants as purchasers. It was considered that the testator had in view the Statute of Distributions, and intended that, on the death of his daughter, those were entitled who would take as her distributees.

In *Baily* vs. *Patterson*, (3 Rich. Eq., 156,) it is said: "It is always open to inquiry whether the testator used the word 'heirs' according to its strict and proper application, or in a mere inaccurate sense, to denote 'children,' 'next of kin,' and so forth."

But is the rule in Shelly's case applicable here? It is not, because it has no relation to personalty.—*Austin* vs. *Payne*, 2 Rich. Eq., 1. But, even if it should be admitted that the property purchased of Chafee was with the proceeds of that conveyed by this deed and subject to the disposition which it directs, then, according to the reasoning in the opinion of the Court in *McLure* vs. *Young*, (3 Rich. Eq., 559,) and the authority of that case, it would not be affected by the said rule. Those entitled in remainder, under this deed, must be in existence at the termination of the life estate, and are looked to "as a class to take at a particular period." The idea of the creation of a perpetuity is entirely precluded by the words employed. That the grantor had in view those who, at the death of the wife, would be entitled as her next of kin, is manifest by the mode and proportions in which they are to take, from the words "who may, by law, be entitled." It is tantamount to a gift to the distributees of the wife, at her death, in the manner and proportions prescribed by the statute. The objects are not pointed out as holding under or through her, but they derive their title under the deed, as to "an original estate."

Even if the conveyance by Mrs. Drayton to Monaghan, with the release to her by the trustee, Frost, could be considered a valid execution of the power, under the deed of 1838, to sell and reinvest, still the property thus substituted by the purchase from Chafee would be subject to the original trusts created by it, and Monaghan, under his conveyance, would have but an interest in the premises during the life of his grantor. In *Laurens* vs. *Lucas*, (6 Rich. Eq., 222,) Chancellor Dunkin, in adverting to the principles by which the Court is governed in compelling the specific performance of contracts for the purchase of land, says: "A purchaser cannot be compelled to take a doubtful title. But on this subject the Court acts on *moral* certainty, and a purchaser will not be permitted to object to a title on account of a bare possibility."

Bearing in mind the principles by which we must be governed in the determination of this question, we cannot affirm the title to be free from such defects as must most probably affect it. To bind the proposed purchaser, it should, at least, be clear of all such doubts as preclude the Court from affirming that, to "a moral certainty," it is valid. This we do not feel justified in saying.

The motion is dismissed.

*Moses*, C. J., concurred.

WILLARD, A. J. I concur in the foregoing judgment, but do not deem it necessary to pass upon the validity of the title involved. It is enough to defeat the present proceeding if the questions affecting the title are of sufficient gravity to render it proper that all the parties in interest should be brought before the Court.

Questions of that character, involving both legal and equitable principles, present themselves in the present case, while parties essential to their proper solution are not before the Court.